UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

CAROLINA CASUALTY INSURANCE COMPANY,
a Florida Insurance Company                    Case No. 2:12-cv-1828

       Plaintiff,

vs.

LAW OFFICES OF ROBERT M. PEARS, P.C.; DANA
SUGGS, individually and as mother and next friend
of VANN A. SUGGS, a minor; ELIZABETH W. McELROY,
as Administrator of the Estate of CHARLOTTE WHITE
FARRIS; CHARLES McDONALD;
and ANNETTE SNOW,

       Defendants.
_____/

### FIRST AMENDED COMPLAINT FOR RESCISSION

Plaintiff, Carolina Casualty Insurance Company ("Carolina Casualty"), by and through its undersigned counsel, hereby files its First Amended Complaint for Rescission against Defendant, Law Offices of Robert M. Pears, P.C. ("Pears") , and in support thereof, respectfully states as follows:

### PREFATORY NOTE

Carolina Casualty brings this action to rescind two policies of professional liability insurance issued to Pears based on material misrepresentations made by Pears to Carolina Casualty in applying for said policies.

Plaintiff brings this First Amended Complaint for Rescission to identify Elizabeth W. McElroy as Administrator of the Estate of Charlotte White Farris, which was previously incorrectly identified as William M. Dawson as Administrator of the Estate of Charlotte White Farris in the original Complaint for Rescission. All exhibits from the original Complaint are expressly incorporated herein.

## PARTIES

1. Plaintiff, Carolina Casualty, is an Iowa insurance company with its principal place of business in Jacksonville, Florida and is licensed to transact business in Florida.

2. Defendant, Pears, is or was at all material times hereto, an Alabama Professional Service Corporation.

3. Defendant, Dana Suggs, is on information and belief a resident of the County of St. Clair, State of Alabama. Ms. Suggs is a nominal defendant for whom no relief is sought.

4. Defendant, Elizabeth W. McElroy, as the Administrator of the Estate Of Charlotte White Farris, ("Administrator") is on information and belief a resident of Alabama with a principle place of business in Jefferson County, Alabama. The Administrator is a nominal defendant for whom no relief is sought.

5. Defendant, Charles McDonald is on information and belief a resident of Adamsville, in the County of Jefferson, Alabama. Mr. McDonald is a nominal defendant for whom no relief is sought.

6. Defendant, Annette Snow, is on information and belief a resident of Adamsville, in the County of Jefferson, Alabama. Ms. Snow is a nominal defendant for whom no relief is sought.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this complaint pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Pears has attempted to put Carolina Casualty on notice of various matters to which it seeks coverage, including a suit filed by Dana Suggs pending in Jefferson County Court, bearing case no. CV-2012-900620.00; (b) a letter written by the Administrator of the Estate of Charlotte White Farris making a claim against Pears for deficiencies in the

preparation of the will and funding of a trust, an inadequate inventory, and the failure to pursue recovery of assets, including a failure of Pears to pay sums owed to the estate; and (c) potential claims by Annette Snow and Charles McDonald.

9. Venue is proper in this District pursuant to § 1391, as Defendant Pears is a resident of Jefferson County, Alabama and further, many of the acts at issue, i.e., the delivery of the insurance contracts and the alleged conduct in Pears' failure to distribute funds, which form the basis of this suit, occurred in Alabama.

## BACKGROUND

10. This is an action for rescission of two insurance policies brought pursuant to Ala. Code § 27-14-7.

11. Carolina Casualty issued two claims made and reported Lawyers Professional Liability Policies to The Law Offices of Robert M. Pears as named insured: (1) Policy No. 9997500 for the policy period August 19, 2010 to August 19, 2011, with limits of liability of $1,000,000 each claim and in the aggregate, subject to a $5,000 per claim deductible; and, (2) Policy No. 91047656 for the policy period August 19, 2011 to August 19, 2012, with limits of liability of $1,000,000 each claim and in the aggregate, subject to a $5,000 per claim deductible. (Attached hereto and incorporated herein, respectively as Exhibit A and Exhibit B).

12. The Insuring Agreement in both of the Policies provides as follows:

1. Insuring Agreement

This **Policy** shall pay on behalf of the **Insured** all **Damages** and **Claims Expense** that the **Insured** shall become legally obligated to pay, arising from any **Claim** first made against an **Insured** during the **Policy Period** and reported to the **Insurer** in writing during the **Policy Period** or within 60 days thereafter for any actual or alleged **Wrongful Act**, provided that prior to the inception date of the first Lawyers' Professional Liability Insurance Policy issued by the **Insurer** to the **Named Insured**, which has been continuously renewed and maintained in effect to the inception of this **Policy Period**, any **Insured** did not know or could not reasonably foresee that such actual

or alleged **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

See Exhibits A and B.

13. Both Carolina Casualty Policies contain the following definitions:

"**Claims Expense**" means reasonable and necessary fees, costs and expenses. . . resulting solely form the investigation, adjustment, defense and appeal of a covered or potentially covered **Claim** against the **Insureds**, but excluding salaries, wages, overhead or benefit expenses associated with any **Insured,** or any amount covered by the duty to defend obligation of any other insurer.

"**Damages**" means a monetary judgment, award or settlement, pre-judgment interest and post-judgment interest; provided, however, **Damages** shall not include:

1. taxes, civil or criminal fines, or penalties imposed by law;

2. punitive or exemplary damages, or any multiplied damages award in excess of the amount so multiplied;

3. matter which are uninsurable under the law pursuant to which this Policy is construed; or

4. legal fees, costs and expenses paid, incurred or charged by the **Insured**, whether claimed as forfeiture, restitution of specific funds, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing; or

5. legal fees, costs, fines, penalties, sanctions, or other amounts awarded against an **Insured** or any client of an **Insured** based upon the actual or alleged filing of pleadings or other papers under any federal or state statute, administrative rule, court rule or case law, including, but not limited to Rule 11, Federal Rule of Civil Procedure, any successor thereto or state rule counterpart.

"**Professional Services**" means services:

1. rendered by an **Insured** solely as a lawyer, mediator, arbitrator, or notary public for others; or

2. performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee, or in any other fiduciary capacity, or. . . .

"**Wrongful Act**" means any actual or alleged act, omission or **Personal Injury** arising out of **Professional Services** rendered by an **Insured** or by any person for whose act or omission the **Insured** is legally responsible.

See Exhibits A and B.

14.     Robert M. Pears, President of The Law Offices of Robert M. Pears, P.C., completed a CNA Lawyers' Professional Liability Insurance application G-130953-A (Ed. 03/02) on August 18, 2010.  See Exhibit C attached hererto and incorporated herein.

15.     Robert M. Pears, President of the Law Offices of Robert M. Pears, P.C., also completed a Carolina Casualty  Lawyers' Professional Liability Insurance Incorporated Proposal Form LPL 29501 (rev. 04-09) on August 18, 2010 for the Carolina Casualty Policy effective August 19, 2010 to August 19, 2011.  See, Exhibit D attached hererto and incorporated herein.

16.     The CNA Application Form contained the following question and the following response:     <u>After inquiry, is any attorney in the firm aware of:</u>

> 30.   any act or omission that may reasonably be expected to be the basis of a claim against them, the firm, any predecessor firm, or against any current or former attorney of the firm, while affiliated with the firm.
>
> Response:   No.

See Exhibit C.

17.     The Carolina Casualty Proposal Form incorporated by reference CNA Application for Lawyers Professional Liability Insurance signed 8-18-10 and contained the following question and  the following response:

> 1. Is the Applicant Firm or any lawyer in the Applicant Firm aware of any fact, circumstance or situation that might reasonably be expected to result in any professional liability claim or suit against the Applicant Firm, or any predecessor in business, or any past or present  lawyers in the Applicant Firm.
>
> Response:   No.
>
> IT IS UNDERSTOOD AND AGREED THAT THE INSURER SHALL NOT BE LIABLE TO MAKE ANY PAYMENT FOR DAMAGES OR CLAIMS EXPENSE IN CONNECTION WITH ANY CLAIM MADE AGAINST ANY INSURED BASED UPON, OR ARISING OUT OF, DIRECTLY OR INDIRECTLY RESULTING FROM ORIN CONSEQUENCE OF, OR IN ANY WAY INVOLVING ANY PROFESSIONAL LIABILITY CLAIM OR

>SUIT, FACT, CIRCUMSTANCE, OR SITUATION SET FORTH OR THAT SHOULD HAVE BEEN SET FORT IN THE INSURED'S RESPONSE TO QUESTION 1.

See, Exhibit D.

18. The Carolina Casualty Underwriters were also supplied with the August 19, 2009 completed Navigators Insurance Company application for lawyers' professional liability insurance which contained the following questions and following responses:

>9. B. In the last five years, has any lawyer included in Question 4C been the subject of a reprimand, complaint, disciplinary action, revocation, suspension or refused admissions to the Bar, by any bar association court or administrative agency, etc? If yes, please provide dates and details on the SUPPLEMENT #1, Item D2.
>
>Response: Yes, 90 day suspension – 2006.
>
>9. C. Does any lawyer included in Question 4C know of an act or omission that may reasonably be expected to be the basis of a claim against them, the firm, any prior or predecessor firm, or against any current or former attorney of the firm, while affiliated with the firm? If "yes", complete SUPPLEMENT #2 for each circumstance/incident.
>
>Response: No.

See Exhibit E.

19. At no time following the completion of the CNA Application and the Carolina Casualty Proposal Form did any insured supplement or modify the responses on either the Application and Proposal Form.

20. The CNA Application stated the following:

>Applicant hereby represents, after inquiry, that the information contained herein and in any supplemental applications or forms required hereby, is true, accurate and that no material facts have been suppressed or misstated. Applicant acknowledges a continuing obligation to report to the Company as soon as practicable any material changes in all such information, after signing the application and prior to issuance of the policy, and acknowledges that the Company shall have the right to withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance based upon such changes.
>
>Further, Applicant understands and acknowledges that:

1. If a policy is issued, the Company will have relied upon, as representations: the application, and any supplemental applications, and any other statements furnished to the Company in conjunction with this application, all of which are hereby incorporated by reference into this application and made a part hereof.

2. This application will be the basis of the contract and will be incorporated by reference into and made a part of such policy; and

3. Applicant's failure to return to its current insurance company any claim made against it during the current policy term, or act, omission or circumstances which Applicant is aware of which may give rise to a claim before the expiration of the current policy may create a lack of coverage.

Applicant hereby authorizes the release of claim information to the Company from any current or prior insurer of the Applicant.

See Exhibit C.

21. The Carolina Casualty Proposal Form stated the following:

**Please Read Carefully**

The undersigned acting on behalf of all proposed **Insureds**, declare that the statements set forth herein and in the attached application (or Proposal Form) are true and correct and that thorough efforts have been made to obtain sufficient information to facilitate from each **Insured** proposed for this insurance to facilitate the proper and accurate completion of both the Carolina Casualty Incorporated Proposal Form and the attached application (or Proposal Form).

The undersigned agrees that the particulars and statements contained in the Proposal Form and any material submitted herewith are their representations and that they are material and are the basis of the insurance contract. The undersigned further agree that the Proposal Form and any material submitted herewith shall be considered attached to and a part of the Policy. Any material submitted with the Proposal Form shall be maintained on file (either electronically or paper) with the **Insurer** and shall be deemed to be attached hereto as if physically attached.

It is further agreed that:

If any significant change in the condition of the applicant is discovered between the date of this Proposal Form and the Policy Inception date, which would render this Proposal Form inaccurate or incomplete, notice of such change will be reported in writing to the **Insurer** immediately;

Any Policy, if issued, will be in reliance upon the truth of such representations;

> This Proposal Form has been completed as respects the <u>entire</u> Applicant Firm;
>
> the signing of this Proposal Form does not bind the undersigned to purchase the insurance.

See Exhibit D.

22. The 2011-2012 Carolina Policy was auto-renewed on the basis of the materials submitted for the 2010-2011 Carolina Policy, including the August 18, 2010 CNA application, the August 18, 2010 Carolina Incorporated Proposal Form and the August 7, 2009 Navigators Insurance Company application for Lawyers' professional liability policy.

23. The 2010-2011 Carolina Casualty Policy and the 2011-2012 Carolina Casualty Policy (hereinafter referred to as the "Carolina Casualty Policies") provide on the Policy Form LP 29300 (04-09), that:

> In consideration of the payment of the premium and in reliance on all statements in the **Proposal**, and all other information provided to the **Insurer**, and subject to all the provisions of this Policy, the **Insurer** and **Insureds** agree as follows:
>
> \*\*\*
>
> VIII.   General Conditions
>
> \*\*\*
>
> B. Proposal
>
> The **Proposal** is the basis of this Policy and is incorporated in and constitutes a part of this Policy. A copy of the Proposal Form(s) is attached hereto. Any materials submitted with the Proposal Form(s) shall be maintained on file with the **Insurer** and shall be deemed to be attached hereto, as if physically attached. It is agreed by all **Insureds** that the statements in the **Proposal** are their representations, that they are material and that this Policy is issued in reliance upon the truth and accuracy of such statements.
>
> \*\*\*

See Exhibit A and B.

24. In the past few weeks claims have been alleged against Pears regarding misappropriated sums on settlements; missed statute of limitations, misappropriated estate assets among other items.

25. The claims involving the misappropriated sums on settlements have been part of an investigation conducted by the Alabama Bar Association, which resulted in the disbarment of Mr. Pears in March 2012. Mr. Pears consented to the disbarment and in a sworn statement dated March 20, 2012 to the Disciplinary Board of the Alabama State Bar, stated that "I am aware that there is currently pending three investigations into my ethical behavior as an attorney. These matters….involve allegations that I misappropriated client settlement funds from my trust account. I have also submitted a list of other matters to the Office of the General Counsel in which I mishandled or misappropriated client funds."

26. In the course of evaluating this matter, Carolina Casualty has identified several facts, circumstances or situations that might result in a suit against Pears before the Carolina Casualty 2010-2011 Policy incepted but which were not disclosed on the August 18, 2010 CNA application, the August 18, 2010 Carolina Incorporated Proposal Form or the August 7, 2009 Navigators application.

27. Carolina Casualty has identified additional facts, circumstances or situations that might result in a suit against Pears before the Carolina Casualty 2010-2011 Policy incepted but which were not disclosed on the CNA application, the Carolina Proposal Form or the August 7, 2009 Navigators application.

28. The failure of Pears to disclose the facts, circumstances or situations that might result in a suit were misrepresentations material to the risk assumed by Carolina Casualty under the Carolina Casualty Policies.

29.     Pears' misrepresentations were incorporated into the Carolina Casualty Policies and prevented the underwriters from being able to properly evaluate the underwriting risks.

30.     Pears' misrepresentations induced Carolina Casualty to issue the Carolina Casualty Policies.

31.     Carolina Casualty would have altered its underwriting had it known the facts and information misrepresented by Pears' failure to disclose on the applications and Proposal Form: (a) that Pears failed to distribute funds owed to clients and third party lien holders from settlement proceeds; (b) that Pears failed to distribute funds withheld to pay medical bills or liens; (c) that Pears was taking loans from clients and/or borrowing funds from a client's estate and (d) the 2007 conditional guilty plea entered and public reprimand received by Mr. Pears for violating Rules 1.3 and 1.4(a) of the Alabama Rules of Professional Conduct; and the potential claims which may arise therefrom.

32.     Had the omitted information been reported to Carolina Casualty before the effective dates of the Carolina Casualty Policies, Carolina Casualty would not have issued the Carolina Casualty Policies.

33.     Pear's omissions on the applications and Proposal Form constitute material misrepresentations that render the Carolina Casualty Policies void *ab initio*.

34.     Carolina Casualty stands ready to return to Pears the premiums previously paid for the Carolina Casualty Policies.

**WHEREFORE**, Carolina Casualty Insurance Company prays judgment be entered in its favor and that this Court enter judgment:

A.      Declaring Carolina Casualty Policy No. 9997500 and Carolina Casualty Policy No. 91047656 are rescinded; and

B. Declaring that misrepresentations on the applications and Proposal Forms render the Carolina Casualty Policies unenforceable, and preclude coverage for all claims and suits reported under those Carolina Casualty Policies.

C. Declaring such other and further relief this Court deems just, including the award of Carolina Casualty's costs and attorneys' fees.

By: /s/ *Jeffrey W. Melcher*

LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
Attorney for the Plaintiff

Jeffrey A. Goldwater
jgoldwater@lbbslaw.com
Darcy L. Ibach
dlibach@lbbslaw.com
550 West Adams Street, Suite 300
Chicago, IL 60661
312-345-1718
312-345-1778 (facsimile)

Jeffrey W. Melcher, Esq.
jmelcher@lbbslaw.com
1180 Peachtree Street
Suite 2900
Atlanta, Georgia 30309
(404) 348 8585
Fax: (404) 467 8845