# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY, | } } } |
| Plaintiff, | } } |
| v. | } } Case No.: 2:12-CV-01828-RDP |
| LAW OFFICES OF ROBERT M. PEARS, P.C., et. al., | } } } } |
| Defendants. | } |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff Carolina Casualty Insurance Company's Motion for Summary Judgment (Doc. # 44). The matter has been fully briefed. (Docs. # 24, 45, 46, 47, 50). For the reasons stated below, the court concludes that Plaintiff's Motion (Doc. # 44) is due to be granted.

**I.     Facts**[1]

In August 2010, Defendant Robert M. Pears, President of The Law Offices of Robert M. Pears, P.C. ("the Pears Firm"), completed a CNA Lawyers' Professional Liability Insurance application G-130953-A (Ed. 03/02). (Doc. # 44-2, p. 5 at ¶14; pp. 32-36). The CNA application form contained the following question and the following response by Pears:

---

[1] The Clerk of the Court entered default against Defendant Law Offices of Robert M. Pears, P.C. The effect of a default is to render all well-pleaded factual allegations of the complaint (except those relating to damages) admitted. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (internal quotation marks omitted)); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (stating "[t]he liability of [the defendant] is not at issue. Such liability is [sufficiently] pled in the complaint, and is therefore established by the entry of default against him."). By virtue of Pears's default, all of the factual allegations in the First Amended Complaint for Rescission are deemed admitted. Moreover, they are not disputed by the other parties to the case.

After inquiry, is any attorney in the firm aware of:

30. any act or omission that may reasonably be expected to be the basis of a claim against them, the firm, any predecessor firm, or against any current or former attorney of the firm, while affiliated with the firm.

Response: No.

(Doc. # 44-2, p. 5 at ¶16; p. 42).

Pears also completed a Carolina Casualty Lawyers' Professional Liability Insurance Incorporated Proposal Form LPL 29501 (rev. 04-09) on August 18, 2010 for the Carolina Casualty policy effective August 19, 2010 to August 19, 2011. (Doc. # 44-2, p. 5 at ¶15; pp. 37-48). The Carolina Casualty Incorporated Proposal Form incorporated by reference the CNA application for Lawyers Professional Liability Insurance. (Doc. # 44-2, p. 5 at ¶17). The Carolina Casualty Incorporated Proposal Form contained the following question and the following response:

1. Is the Applicant Firm or any lawyer in the Applicant Firm aware of any fact, circumstance or situation that might reasonably be expected to result in any professional liability claim or suit against the Applicant Firm, or any predecessor in business, or any past or present lawyers in the Applicant Firm.

Response: No.

**IT IS UNDERSTOOD AND AGREED THAT THE INSURER SHALL NOT BE LIABLE TO MAKE ANY PAYMENT FOR DAMAGES OR CLAIMS EXPENSE IN CONNECTION WITH ANY CLAIM MADE AGAINST ANY INSURED BASED UPON, OR ARISING OUT OF, DIRECTLY OR INDIRECTLY RESULTING FROM OR IN CONSEQUENCE OF, OR IN ANY WAY INVOLVING ANY PROFESSIONAL LIABILITY CLAIM OR SUIT, FACT, CIRCUMSTANCE, OR SITUATION SET FORTH OR THAT SHOULD HAVE BEEN SET FORT IN THE INSURED'S RESPONSE TO QUESTION 1.**

(Doc. # 44-2, pp. 5-6 at ¶17; 37).

The Carolina Casualty underwriters were also supplied with the August 7, 2009 completed Navigators Insurance Company application for lawyers' professional liability insurance which contained the following question and following response:

> 9. B.   In the last five years, has any lawyer included in Question 4C been the subject of a reprimand, complaint, disciplinary action, revocation, suspension or refused admissions to the Bar, by any bar association court or administrative agency, etc? If yes, please provide dates and details on the SUPPLEMENT #1, Item D2.
>
> Response: Yes, 90 day suspension - 2006.

(Doc. # 44-2, p. 6 at ¶18; p. 51).

The Navigators Insurance Company application for lawyers' professional liability insurance also contained the following question and response:

> 9. C.   Does any lawyer included in Question 4C know of an act or omission that may reasonably be expected to be the basis of a claim against them, the firm, any prior or predecessor firm, or against any current or former attorney of the firm, while affiliated with the firm? If "yes", complete SUPPLEMENT #2 for each circumstance/incident.
>
> Response: No

(Doc. # 44-2, p. 6, ¶18; p. 51).

At no time following the completion of the CNA application and the Carolina Casualty Incorporated Proposal Form did Pears or the Pears Firm supplement or modify the responses on either the CNA application or the Carolina Casualty Incorporated Proposal Form. (Doc. # 44-2, p. 6 at ¶19; Doc. # 44-3, ¶10).

The CNA application stated the following:

> Applicant hereby represents, after inquiry, that the information contained herein and in any supplemental applications or forms required hereby, is true, accurate and that no material facts have been suppressed or misstated. Applicant acknowledges a continuing obligation to report to the Company as soon as practicable any material

3

changes in all such information, after signing the application and prior to issuance of the policy, and acknowledges that the Company shall have the right to withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance based upon such changes.

Further, Applicant understands and acknowledges that:

1.      If a policy is issued, the Company will have relied upon, as representations: the application, and any supplemental applications, and any other statements furnished to the Company in conjunction with this application, all of which are hereby incorporated by reference into this application and made a part hereof.

2.      This application will be the basis of the contract and will be incorporated by reference into and made a part of such policy; and

3.      Applicant's failure to return to its current insurance company any claim made against it during the current policy term, or act, omission or circumstances which Applicant is aware of which may give rise to a claim before the expiration of the current policy may create a lack of coverage.
Applicant hereby authorizes the release of claim information to the Company from any current or prior insurer of the Applicant.

(Doc. # 44-2, pp. 6-7 at ¶20; 48).

The Carolina Casualty Incorporated Proposal Form stated the following:

**Please Read Carefully**

The undersigned acting on behalf of all proposed Insureds, declare that the statements set forth herein and in the attached application (or Proposal Form) are true and correct and that thorough efforts have been made to obtain sufficient information to facilitate from each Insured proposed for this insurance to facilitate the proper and accurate completion of both the Carolina Casualty Incorporated Proposal Form and the attached application (or Proposal Form).

The undersigned agrees that the particulars and statements contained in the Proposal Form and any material submitted herewith are their representations and that they are material and are the basis of the insurance contract. The undersigned further agree that the Proposal Form and any material submitted herewith shall be considered attached to and a part of the Policy. Any material submitted with the Proposal Form shall be maintained on file (either electronically or paper) with the Insurer and shall be deemed to be attached hereto as if physically attached.

4

> It is further agreed that:
>
> If any significant change in the condition of the applicant is discovered between the date of this Proposal Form and the Policy Inception date, which would render this Proposal Form inaccurate or incomplete, notice of such change will be reported in writing to the Insurer immediately;
>
> Any Policy, if issued, will be in reliance upon the truth of such representations;
> This Proposal Form has been completed as respects the entire Applicant Firm;
> The signing of this Proposal Form does not bind the undersigned to purchase the insurance.

(Doc. # 44-2, pp. 7-8, ¶21; 38).

In reliance on the August 18, 2010 CNA application and the August 18, 2010 Carolina Incorporated Proposal Form, Carolina Casualty issued the 2010-2011 Carolina Casualty policy no. 9997500 to the Pears Firm. (Doc. # 44-3 at ¶19). The 2011-2012 Carolina Casualty policy no. 91047656 was auto-renewed on the basis of the materials submitted for the 2010-2011 Carolina Casualty policy, including the August 18, 2010 CNA application and the August 18, 2010 Carolina Incorporated Proposal Form. (Doc. # 44-3 at ¶19).

The 2010-2011 Carolina Casualty policy and the 2011-2012 Carolina Casualty policy (hereinafter referred to as the "Carolina Casualty policies") both provide, on the Policy Form LP 29300 (04-09):

> In consideration of the payment of the premium and in reliance on all statements in the Proposal, and all other information provided to the Insurer, and subject to all the provisions of this Policy, the Insurer and Insureds agree as follows:
>
> ***
>
> General Conditions
>
> ***
>
> Proposal

> The Proposal is the basis of this Policy and is incorporated in and constitutes a part of this Policy.  A copy of the Proposal Form(s) is attached hereto.  Any materials submitted with the Proposal Form(s) shall be maintained on file with the Insurer and shall be deemed to be attached hereto, as if physically attached.  It is agreed by all Insureds that the statements in the Proposal are their representations, that they are material and that this Policy is issued in reliance upon the truth and accuracy of such statements.
>
> \*\*\*

(Doc. # 44-2, pp. 8 at ¶23; 15, 20; 25, 30).

It is undisputed that Pears' applications contained misrepresentations.  Although Pears disclosed a 90-day suspension by the Alabama State Bar in 2006 on the Navigators Insurance application, he did not disclose that he had pled guilty to a violation of Rule 1.15(a) ("Safekeeping Property") of the Alabama Rules of Professional Conduct or that his suspension was for unethical trust account practices.  (Doc. # 44-2, p. 55 and Doc. # 44-4, pp. 72, 100-104).  Nor did Pears disclose on any of the insurance applications that on August 27, 2007, the Disciplinary Board of the Alabama State Bar in case no. ASB 06-146(A) ordered that Pears receive a Public Reprimand without General Publication after Pears pled guilty to violations of Rule 1.3 ("Diligence") and Rule 1.4(a) ("Communications") of the Alabama Rules of Professional Conduct in connection with his failure to file a lawsuit on behalf of a client within the applicable statue of limitations. (Doc. # 44-2, pp. 32-64; Doc. # 44-4, pp. 72, 96-99).

Pears also failed to disclose on any of the insurance applications, or in any supplements thereto, that he had misappropriated sums on settlements in 2004, 2006, 2008, 2009 and 2010.  These misappropriations resulted in Pears' disbarment in March 2012.  (Doc. # 44-2, pp. 32-63 and Doc. # 44-4, pp. 78-95).  On March 20, 2012, Pears ultimately admitted that he had misappropriated

the following amounts on or about the following dates prior to completing the insurance applications at issue:

| | |
|---|---|
| September 2, 2004 | $30,750.00 |
| May 14, 2006 | $7,000.00 |
| April 18, 2008 | $26,867.77 |
| June 26, 2008 | $11,309.47 |
| July 7, 2008 | $22,315.00 |
| May 21, 2009 | $15,939.00 |
| June 18, 2009 | $26,800.00 |
| August 3, 2009 | $575.85 |
| October 22, 2009 | $4,194.38 |
| December 3, 2009 | $2,029.63 |
| January 11, 2010 | $8,333.00 |
| February 13, 2010 | $2,159.04 |
| March 28, 2010 | $1,189.00 |
| March 28, 2010 | $1,049.00 |
| April 13, 2010 | $681.62 |
| April 22, 2010 | $1,189.00 |
| May 4, 2010 | $3,906.00 |
| May 7, 2010 | $2,969.20 |
| May 17, 2010 | $578.92 |
| June 24, 2010 | $3,473.00 |

(Doc. # 44-4, pp. 32-63 and pp. 78-95).

**II.     Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party

has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

**III.    Analysis**

Under Alabama law "[t]he most innocent misrepresentation will afford a reason to rescind [an insurance policy] if the truth is either material to the risk or, even if immaterial, would have caused the particular insurer acting in good faith to have declined coverage." *Stephens v. Guardian Life Ins. Co.*, 742 F.2d 1329, 1333 (11th Cir. 1984), construing Ala.Code § 27-14-7 (1986). An intentional misrepresentation of material fact by an applicant for insurance which is relied upon by the insurer to its prejudice provides an adequate ground for avoidance of a policy. *Reliance Ins. Co. v. Substation Prods. Corp.*, 404 So.2d 598, 604 (Ala. 1981).

Alabama Code § 27-14-7(a) provides as follows regarding misrepresentations in insurance applications:

> Misrepresentations, omissions, concealment of facts and incorrect statements [in an application for insurance] shall not prevent a recovery under the policy or contract unless either:

      1) Fraudulent;

      2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

      3) The insurer in good faith would either not have issued the policy or contract, or would not have issued the policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code. § 27-14-7(a).

    Plaintiff has moved for summary judgment on its rescission claim on the basis that it is entitled to rescind the policy issued to the Pears firm under this statute. To establish a defense under this statute, an insurer "need only have presented evidence that the [applicant] made the misrepresentation and that [the insurer] would not have issued the . . . policy had it known the actual facts. *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994); *see also First Fin. Ins. Co. v. Tillery*, 626 So. 2d 1252, 1256 (Ala. 1993) (An insurer has the right to expect applicants for insurance policies to tell the truth). This principle applies even if the misrepresentation was unintentional. *Clark v. Ala. Farm Bur. Mut. Cas. Ins. Co.*, 465 So. 2d 1135, 1139 (Ala.Civ.App. 1984). Moreover, "[t]hat the insurer could make its own investigation does not lessen its right to rely on the representations in the application." *Nationwide Mut. Fire Ins. Co. v. Pabon*, 903 So.2d 759, 767 (Ala. 2004), citing *Reliance Life Ins. Co. v. Sneed*, 217 Ala. 669, 117 So. 307 (1928).

    Alabama statutory law provides three alternative grounds for rescission.[2] An insurer can rescind a policy or deny coverage if, in the application or "in negotiations therefor," the insured made

---

[2] Although often referred to as the "rescission statute," § 27-14-7 does not mention rescission. Instead, the statute speaks of "prevent[ing] a recovery under the policy." Thus, the grounds for rescission discussed here can also apply to deny coverage under a valid contract of insurance.

9

misstatements that either (1) were fraudulent, (*i.e.*, made intentionally with knowledge); (2) were material to the risk (although innocently made); or (3) affected the insurer's good faith decision to issue the policy for which the insured applied. *See, State Farm Gen. Ins. Co. v. Oliver*, 658 F.Supp. 1546, 1549 (N.D. Ala. 1987), *aff'd sub nom State Farm Fire & Cas. Co. v. Oliver*, 854 F.2d 416 (11th Cir. 1988); *Nat'l Life & Acc. Ins. Co. v. Mixon*, 291 Ala. 467, 282 So.2d 308, 312 (1973).

In Alabama, the issue of whether a particular undisclosed fact increases the risk of loss assumed by an insurance company is generally one for the jury. *National Security Insurance Co. v. Tellis*, 39 Ala.App. 455, 104 So.2d 483 (1958). "However, it has been held that there are some conditions which increase risk of loss as a matter of law." *Clark*, 465 So.2d at 1139; *Liberty National Life Insurance Co. v. Trammel*, 33 Ala.App. 275, 33 So.2d 479 (1947) (cancer); *Ginsberg v. Union Central Life Insurance Co.*, 240 Ala. 299, 198 So. 855 (1940) (misstatement of age); *Camden Fire Insurance Association v. Landrum*, 229 Ala. 300, 156 So. 832 (1934) (possession of property by tenant other than the one insured under a fire insurance policy); *Gunn v. Palatine Insurance Co.*, 217 Ala. 89, 114 So. 690 (1927) (misrepresentation of extent of ownership interest); *Crumpton v. Pilgrim Health & Life Insurance Co.*, 35 Ala.App. 363, 46 So.2d 848 (1950) (Hodgkin's disease); *see also Alfa Life Ins. Corp. v. Lewis*, 910 So.2d 757, 762 (Ala. 2005).

In *Clark*, the insureds applied to Alabama Farm Bureau for a farm-owner policy. In their application, they failed to disclose arrests and/or convictions for prostitution, living off the earnings of a prostitute, and violations of the Florida Obscenity Law. *Clark v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 465 So.2d 1135, 1140 (Ala.Civ.App. 1984). The court determined that these crimes were ones of moral turpitude and that the failure to disclose them to a prospective insurer increased the risk of loss as a matter of law. *Clark*, 465 So.2d at 1140.

Here, Pears and the Pears Firm applied for professional liability insurance. In the application process, Pears and the Pears Firm failed to disclose not only disciplinary proceedings taken by the Alabama State Bar against Pears, the President of the Pears Firm, but also that he had, on twenty occasions, misappropriated client funds.[3] There is no doubt in the court's mind that Pears's misrepresentations regarding these issues were (1) false, (2) material to the risk, and (3) had a bearing on the issuance of the policy. This court finds that, as a matter of law, if a professional liability insurer had known the applicant had additional undisclosed disciplinary proceedings against him and had misappropriated client funds on twenty occasions, the policy would not have been issued.[4]

## IV.    Conclusion

Plaintiff Carolina Casualty Insurance Company is entitled, pursuant any of the three subsections of § 27-14-7(a), to rescind the Professional Liability Insurance Policy issued to the Law Offices of Robert M. Pears, P.C. Therefore, Plaintiff Carolina Casualty Insurance Company's Motion for Summary Judgment (Doc. # 44) is due to be granted. A separate order will be issued.

---

[3] Nominal Defendant Dana Suggs argues that Plaintiff should have been put on notice that it needed to further investigate Pears' disciplinary history due to the disclosure of the 2006 disciplinary suspension. (Doc. # 46). The court disagrees. "That the insurer could make its own investigation does not lessen its right to rely on the representations in the application." *Nationwide Mut. Fire Ins. Co. v. Pabon*, 903 So.2d 759, 767 (Ala. 2004) (citing *Reliance Life Ins. Co. v. Sneed*, 217 Ala. 669, 117 So. 307 (1928)). The disclosure of one closed disciplinary issue does not put the insurer on notice that it should search for additional issues. This argument is moot in any event because no inquiry with the Alabama State Bar would have revealed the twenty instances where Pears misappropriated client funds which is in itself a sufficient basis for Plaintiff to rescind the policy.

[4] To make this point even more plainly, the court concludes that if any professional liability carrier were presented with the information which was undisputedly withheld in this case — that the applicant attorney had been subject to two (additional) instances of discipline by the state bar association and had misappropriated client funds on twenty different occasions — ten times out of ten, the carrier would decline to issue a policy. There are certain facts that increase the risk of loss as a matter of law, *see Clark*, 465 So.2d at 1139, and the court concludes that these omissions are among them.

**DONE** and **ORDERED** this \_\_\_\_10th\_\_\_\_ day of April, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE